## CIRCUIT COURT OF THE CITY OF ROANOKE

Donna O. Johnson, Adm'x
of the Estate of Donald R. Johnson

v.

Roanoke Memorial Hospitals, Inc., et al.

August 13, 1987

Case No. (Law) 87-321

By JUDGE JACK B. COULTER

In effort to prepare her case, as well as evaluate its potential and develop evidence in its support, the plaintiff has requested the defendant hospital to produce copies of its policies and procedures pertaining to emergency room nursing and medical services in effect on February 12, 1985. On that date, it is alleged that Donald Randolph Johnson, the plaintiff's decedent, went to the emergency room of the Roanoke Memorial Hospital complaining of a severe sore throat and related symptoms. He was seen, treated and released. He died at the age of thirty-three on the way home.

The plaintiff has also requested copies of any incident reports relating to the event, but since there were no such reports, their discoverability in this case has become moot.

The material requested by the plaintiff has been identified by the affidavit of the executive vice-president of the Roanoke Hospital Association as the Licensed Practical Nurse's Aides's Job Description, the Registered Professional Nurse Job Description, and the Care Manual on Triage and Nursing Assessment, all as related to the Emergency Department. The job descriptions are prepared

by Nursing Administration and are part of the Nursing Service Manual. The Care Manual on Triage Assessment is prepared by the Emergency Room Committee. Each of these materials is submitted to a Chief Executive Officer of the hospital for approval.

The defendant has resisted the production of these documents on the basis that they are privileged under the provisions of §§ 8.01-581.16 and 8.01-581.17 of the Code of Virginia, that they are not relevant, and that they could not reasonably lead to the discovery of admissible evidence.

This court has previously ruled in *Malone v. Gill Memorial*, Law Action 86-0307 (1986), that such material was discoverable, a position reenforced by a similar decision of U. S. District Court Judge Jackson L. Kiser on June 29, 1987, in *Bagley, Exec. v. Roanoke Memorial*, Civil Action No. 87-0054R.

Because of the importance of the issue, the tenacity of the defendant's resistance, public policy concerns in genuine conflict, and the apparent differing attitudes and rulings of state trial judges, a review of this court's analysis and prior conclusion is justified. The matter thus will be considered afresh and subjected to more reasoned review.

### The Motion to Produce and the Issues Presented

The request for the production of documents (Rule 4:9) is controlled by the general provisions governing discovery (Rule 4:1), which provides in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Whether the material sought is to be used offensively to establish the claim or defensively to rebut anticipated defenses or impeach the credibility of opposing witnesses, the thrust of discovery may serve either purpose.

Within the confines of the rule, then, there are three issues to be addressed:

1. Is the matter sought privileged?
2. Is it relevant?
3. If inadmissible, nonetheless, is it reasonably calculated to lead to the discovery of evidence that is?

### Are the Documents Privileged?
### An Analysis of Sections 8.01-581.16 and 8.01-581.17

Whether or not the precise documents sought to be produced are privileged is governed by §§ 8.01-581.16 and 8.01-581.17 of the Code of Virginia. These sections, of course, must be read together because the second section (Section 8.01-581.17), which grants the privilege, refers back to the preceding section (8.01-581.16) for definitional guidelines. The scope of the privilege granted by the latter statute, in other words, is defined by the former.

The major objective of these statutes granting both immunity from civil liability and privilege from disclosure is the protection intended to be conferred upon peer reviews, those internal investigations of the quality of services provided by an organization or individual. It is the searching self-critical analysis by which performance is judged by one's colleagues or superiors that characterizes the peer review. The purpose of such review in the medical setting is to improve the efficiency of medical techniques and procedures in the delivery of health care. Such reviews should be free-wheeling exchanges where criticisms are actually encouraged and mistakes or deficiencies aggressively exposed toward the overall improvement of the system. Open discussion and vigorous debate must be promoted without the concern that remarks might be made public. The whole procedure of peer review, if it is to have meaning and substance, must be totally uninhibited from the fear of disclosure.

It is the meetings, minutes and reports of such no-holds-barred investigations, the true peer review, that these statutes are primarily designed to protect. But the ultimate end results of such critiques, which might find their way into depersonalized manuals of procedure and which have been shorn of individualized criticisms, does not merit the same concern for protection from public scrutiny. Ambiguities in the statutes should not be extended to enlarge the privilege.

The items involved in the case at bar are not the minutes or records of peer review committees. They may have some relation to such self-critical analysis; they may incorporate some findings of prior peer review conclusions or recommendation, but they are Job Descriptions or Care Manuals. Technically and semantically, these documents at issue may come within the broad penumbra of "proceedings, minutes, records and reports of any medical staff committee, utilization review committee or other committee." Almost anything could come within such broad and limitless sweep. But the real vitals of the statute's intent is not at risk in the case at bar.

Beyond this analysis, however, the final phrase of § 8.01-581.17 cannot be ignored and must be met head on. As read by this court, these words practically eliminate any privilege that the preceding language might grant. This statute concludes:

> nor shall this section preclude or affect discovery of or production of evidence relating to hospitalization or treatment of any patient in the ordinary course of hospitalization of such patient.

Any evidence, then, that relates to the treatment of any patient or his hospitalization (which would necessarily include a decision not to hospitalize) is discoverable, notwithstanding whatever privilege the preceding language may have granted. How can these words be given any other meaning than what they clearly say: this section shall *NOT* preclude, it mandates, or affect discovery of evidence that relates to a patient's hospitalization or treatment. And this relation is not quantified; *any* relation to

treatment or hospitalization, however infinitesimal, however generalized, is all that is required.

Procedures, then, which govern nursing and medical services in the emergency room of a hospital which, as the plaintiff suggests, might well cover requirements for obtaining a medical history, for conducting a physical examination, or for providing laboratory tests would clearly bear some relation to the treatment of a patient or the decision to hospitalize or not.

The defendant advances the classical argument that each and every part of a statute should be given meaning and effect, and that to construe the last phrase of the statute as taking away the privilege granted in the first would render the statute meaningless. Such, it is urged, is contrary to the basic rules of statutory construction, and so it is. But then what meaning should be given to the last phrase? Is it to be ignored? In what way or degree has its scope been limited?

It is this court's conviction that the legislature intended to sanctify the genuine work of peer review committees and the bare-knuckle details of their searching self-criticisms; that such internal debate should be free and uninhibited; but that the end results of such investigations and evaluations, depersonalized and void of individual criticisms and fault-finding, should not be entitled to such protection.

Because the documents sought may, in fact, be general guidelines as between the hospital and its employees, as the defendant contends, does not eliminate the fact that they may also relate to the hospitalization or treatment of a patient, evidence which the last phrase of Section 8.01-581.17, if it has any meaning at all, clearly makes discoverable.

*Is the Information Sought Relevant?*

But is the information contained in this material relevant? Relevancy is an illusive concept, briefly defined as that which contributes to the proof or disproof of a particular contention. It is a term that describes the logical relationship between the item offered and the proposition sought to be established. The Federal Rules define "relevant evidence" as "evidence having

*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Fed. R. Evid. 401)

At the discovery phase of a dispute, of course, the precise details of the material sought to be discovered is unknown to the party seeking the discovery. So long as there is logical reason to believe that the material sought might be relevant, that it might *tend* to prove or disprove a certain proposition, the requirement is met. After all, the relevancy of that which is not yet known can hardly be fairly evaluated until it is known, until the discovery has been accomplished. Its ultimate relevancy can be more accurately evaluated at a later time. Fairness dictates that its relevancy not be determined in total darkness.

Little imagination is required to conclude that the documents sought are quite likely to contain information relevant to the care and treatment of patients who are seeking medical assistance at the emergency room of a hospital. Job descriptions and care manuals almost by definition would address the subject of policies and procedures of personnel who would be expected to render nursing and medical services to those seeking or needing such attention.

If, on the other hand, such information turns out to be irrelevant, it can be excluded on such grounds at trial.

### Since, However, the Documents Might Not Be Admissible at Trial Should They Be Discoverable?

Even if relevant, however, the defendant argues that such evidence would be inadmissible at trial and consequently the information solicited is not reasonably calculated to lead to the discovery of admissible evidence. The rule, however, expressly provides that the possible inadmissibility at trial of the information sought will *not* preclude its discoverability if it might reasonably produce admissible evidence. How to measure the likelihood that such result will occur, especially when the details of the subject information remain unknown, is left to the wide discretion of the trial court.

Payroll records of these employees or documents relating to their church affiliation or political preferences would be so farfetched as obviously they could not reasonably lead to the discovery of admissible evidence; but the records sought are not of such taint. There is a possible nexus.

Since full and open discovery is the overwhelming order of the day and since decisions of ultimate admissibility and relevancy are not yet ripe for rule, the fairer judgment at this stage of the proceeding as perceived by this court would be to allow the plaintiff opportunity to explore the full potential of the documents at issue. Secrecy, after all, is anathema to the search for truth and is foreign to the American process.

### *Holding These Documents Inadmissible Now Is Premature:* Pullen *May Not Control*

It should also be noted in passing that the decision in *Pullen v. Nickens*, 226 Va. 342 (1983), reaffirming the pre-World War I ruling in *Virginia Railway and Power Co. v. Godsey*, 117 Va. 167 (1915), to the effect that private rules and regulations are not admissible to establish negligence, is not necessarily controlling in the case at bar. Though clearly persuasive in the principle advanced and a heavy burden for the plaintiff to distinguish or overcome, the ultimate admissibility of these documents is not yet at issue. Attempts to differentiate these decisions from the medical arena were advanced by Gwen M. Schockemoehl in her article "Admissibility of Written Standards as Evidence of the Standard of Care in Medical and Hospital Negligence Actions in Virginia," 18 U. of Richmond Law Review 725 (1984). Furthermore, one of the arguments in support of the *Godsey* decision of 1915 was the expressed observation that the majority rule then in vogue in the nation prohibited the introduction of a company's private rules. Since then, however, the climate has substantially changed. As noted by Justice Cochran in the *Pullen* case:

> We acknowledge that although there is substantial disagreement in other jurisdictions as to the admissibility of a defendant's private rules,

*the majority of jurisdictions hold that they are admissible.* (Emphasis added.)

The annotation "Admissibility in Evidence of Rule of Defendant in Action for Negligence," 50 A.L.R.2d 16, claims that the admissibility of such rules is permitted in "approximately three-fourths of the jurisdictions in which the question has been considered." *See also Broaddus v. Standard Drug Co.,* 211 Va. 645 (1971), in which the private manual of the detective agency was admitted and formed the basis of the court's decision. Furthermore, in an effort to establish "custom of the trade" or "general usage," or "common practice," rather than as an exception to the hearsay rule, many jurisdictions have admitted a company's safety rules. *See McComish v. DeSoi,* 200 A.2d 116 (N.J. 1964), and *Darling v. Charleston Community Memorial Hospital,* 211 N.E.2d (Ill. 1965), as two examples. Virginia cases advancing this principle include *C & M Promotions v. Ryland,* 208 Va. 365 (1967), and *Andrews v. Appalachian Electric Power Co.,* 192 Va. 150 (1951).

### *Most of the State Trial Court Decisions Cited by Defendant Address the* Admissibility *of Such Documents Not Their* Discoverability

The defendant has referred to several trial court decisions as supportive of its position. Most of these cases, however, only ruled that internal documents, manuals, bylaws and the like were not *admissible*; the issue of their *discoverability* was not addressed. In *Taylor v. Richmond Memorial Hospital* (Cir. Court, City of Richmond, Case No. LG-915, 1984) [2 Va. Cir. 224], Judge Walker only ruled that the request for admissions based on hospital policies and regulations was improper. The question of their discoverability was not passed upon, nor were the subject code sections considered.

In the unpublished Fourth Circuit opinion in *Strayer v. Halterman* (Case No. 82-1673), the federal court in affirming the jury verdict in favor of the doctor held that the trial court was not in error in excluding the hospital emergency room manual. The question of its discoverability, however, was not mentioned.

In the cases of *Graves v. Community Hospital* (Cir. Court of Mecklenburg Co., Case No. 1721, Mar. 9, 1984), and *Layne v. Christy* (Cir. Court, City of Richmond, No. LG-1725, Oct. 3, 1984), the opinions or orders of Judges McCormick and Spain were not included in the defendant's memorandum; but, similarly, their decisions were apparently limited to the *inadmissibility* at trial of an emergency room manual and bylaws of the medical staff and the American College of Surgeons. Again, the *discoverability* of these documents was apparently not considered.

Judges Thomas Nance and Duane Mink, however, have ruled that such documents were not discoverable. Their opinions, contrary to Judge Kiser's and this court's, merit, of course, great respect and deference, and is one of the reasons that has prompted this in-depth analysis and reconsideration.

Judge Nance's ruling of Oct. 6, 1986, in the Medical Malpractice Review Panel hearing in the claim of *Peck v. Chippenham Hospital, Inc.* denied the plaintiff's motion to compel the production of *"all* rules, regulations, standards" which showed or tended to show a standard of care.

In *Crowder v. Nicholson* (Cir. Court of Giles County, June 30, 1987), Judge Mink denied the plaintiff's request for the production of *all* rules, regulations and by-laws of the hospital because they could not be introduced into evidence on the basis of the *Pullen* decision and because the plaintiff had not shown how discovery of these rules could lead to admissible evidence.

Perhaps because the plaintiff was greedily seeking *"all"* rules and regulations, an overly broad, all-embracing sweep rather than limited and specific documents, these judges were not overly sympathetic to the demand. Furthermore, it is submitted that in the arena of discovery the burden is on the one seeking to exclude, not on the one trying to discover. These decisions, however, do demonstrate the closeness of the issue and the need for some consistent resolution.

## The Law in Other Jurisdictions

There are numerous cases throughout the country on this controversial subject which is partially annotated

in 15 A.L.R.3d 1446, "Scope of Defendant's Duty of Pretrial Discovery in Medical Malpractice Action." The author summarizes the trend:

> A majority of courts that have spoken on the question have allowed the plaintiff in a medical malpractice action quite liberal discovery, many specifically stating that the difficulty in discovering evidence in a malpractice action makes it all the more important that the plaintiff be allowed to examine the defendant, especially as to those facts that are solely within his knowledge.

*See also* a companion annotation "Discovery of Hospital's Internal Records or Communications as to Qualifications or Evaluation of Individual Physicians," 81 A.L.R.3d 944.

Particularly on point in allowing discovery and persuasive in the reasoning advanced are the cases of *State ex rel. Chandra v. Sprinkle*, 678 S.W.2d 804 (Mo. 1984); *Kenney v. Superior Court*, 63 Cal. Rptr. 84 (1967); *Nazareth Literary and Benevolent Institution v. Stephenson*, 503 S.W.2d 177 (Ky. 1973); *Wesley Medical Center v. Clark*, 669 P.2d 209 (Kan. 1983); *Cronin v. Strayer*, 467 N.E.2d 143 (Mass. 1984); *St. Louis Little Rock Hospital, Inc. v. Gaertner*, 682 S.W.2d 146 (Mo. App. 1984); *Hutchinson v. Smith Laboratories, Inc.*, 392 N.W.2d 139 (Iowa 1986); *Anderson v. Breda*, 700 P.2d 737 (Wash. 1983).

There are, of course, significant decisions to the contrary, which would include *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249 (D.D.C. 1970), aff'd. 479 F.2d 920 (D.C. Cir. 1973); and *Dade County Medical Ass'n. v. Hlis*, 372 So. 2d 117 (Fla. D.C. App. 1979).

### Conclusion

In the final analysis a balancing of interests is the critical test. What are the benefits to be achieved in refusing disclosure against the harm to the plaintiff that might thereby result. The records sought are not the pure peer review proceedings that public policy might justify in keeping secret. At issue are mere Job Descriptions and Care Manuals. Disclosing their contents for

discovery purposes should not cause much harm to the hospital; it should not, and will not, discourage their continuing and self-serving efforts to improve health care. On the other hand, a young man died, it is claimed, because of the negligence of the defendants, or some of them. The issue of the moment, after all, is not were the defendants in fact negligent; that is reserved for a later day. The present question is will those who stand in the shoes of the alleged victim, seeking recompense for his untimely death, be hindered or helped under the modern liberal scope of pretrial discovery. When the input by one party to an issue in dispute has been silenced by death, natural notions of fair play lean toward opening rather than closing doors that might balance the contest. The potential harm to the plaintiff in refusing the discovery sought outweighs the benefit to the defendant in maintaining their secrecy.

Considering all the factors herein discussed, therefore, it is the judgment of this court that the plaintiff's request should be granted. The defendants' objections are accordingly overruled.