## CIRCUIT COURT OF THE CITY OF PETERSBURG

Corrine Stevens

v.

Valerie A. Lemmie

Case No. CL95-405

Jacqueline Brown

v.

Valerie A. Lemmie

Case No. CL96-114

Jacqueline Brown

v.

David S. Dunham

Case No. CL96-145

December 10, 1996

BY JUDGE DONALD W. LEMONS

The matters before the Court are three Petitions for Mandamus (as amended) requesting information, under the Virginia Freedom of Information Act (FOIA) (Virginia Code §§ 2.1-340 through 2.1-346.1), regarding the fire that took place at Southside Regional Medical Center (SRMC, the Hospital) on the night of December 31, 1994. Corrine Stevens is executor of the estate of Alma Esther Bland Johnson who died in the fire. Ms. Stevens is the decedent's representative for the purposes of a wrongful death action filed arising from the fire. Ms. Jacqueline Brown is not a plaintiff or potential plaintiff in any action arising from the fire. Valerie A. Lemmie is the City Manager of the City of Petersburg. David S. Dunham is the President of The Hospital Authority of the City of Petersburg, d/b/a Southside Regional Medical Center. The Hospital is a political subdivision of the Commonwealth of Virginia operated pursuant to § 15.1-1535 of the Code of Virginia.

For the sake of this opinion, cases CL95-405 and CL96-114 with defendant, Valerie A. Lemmie as the City Manager of the City of Petersburg, will collectively be referred to as the case against the City. Similarly, case CL96-145 naming David S. Dunham as defendant as the President of the Hospital Authority of the City of Petersburg, d/b/a Southside Regional Medical Center, will be referred to as the case against SRMC or the Hospital.

In determining these FOIA actions, the Court recognizes the policy of FOIA as presented by the General Assembly in Virginia Code § 2.1-340.1. In addition this Court also recognizes that FOIA:

> shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption shall be narrowly construed in order that nothing which should be public may be hidden from any person.

Va. Code Ann. § 2.1-340.1 (1995).

The items in question in the case against the Hospital are listed on the Amended Index filed on August 2, 1996. The Court has reviewed the items submitted *in camera* including the video tape (with audio). The only items in question in the cases against the City are the videotape (with audio) and the Pinkerton incident reports.

The Court's opinion will address the following questions in order: (1) Are the items in question covered by FOIA? (2) Does a FOIA exemption or statutory exception apply? (3) Has there been a waiver of that protection? (4) Do these requests constitute an improper use of FOIA? The opinion only addresses the question of whether these items are discoverable under FOIA. Whether any of these items would be discoverable in a particular civil action pursuant to the Rules of Court and applicable statutes is not at issue in these cases and would be analyzed differently.

## I. *FOIA Coverage*

First the Court must determine if the items in question are "official records" subject to FOIA.

> "*Official records*" means all written or printed books, papers, letters, documents, maps and tapes, photographs, films, sound recordings, reports or other material, regardless of physical form or characteristics, prepared, owned, or in the possession of a public body in the transaction of public business.

Va. Code Ann. § 2.1-341 (1995).

Given the public policy behind FOIA as articulated in § 2.1-340.1, the Court must read this section broadly. All of the items in question were "prepared, owned, or in the possession of a public body in the transaction of business."

For example, the videotape of fire damage was made on the day after the fire by a SRMC employee at the direction of SRMC's attorney. The attorney testified that the videotape was made in anticipation of potential litigation and was therefore "prepared" in the transaction of the Hospital's business. Similarly, the incident reports were regularly made, pursuant to an agreement between Pinkerton and SRMC, regarding the safety of SRMC's patients, staff, and visitors.

Whether the videotape or incident reports were ever utilized by any member of SRMC to make a business decision or whether they were disseminated to various hospital committees is not relevant to their char-

acterization as "official records." They related to the business of the Hospital and as such are "official records" and therefore subject to § 2.1-342.

The Court finds that the videotape and the incident reports are also "official records" of the City of Petersburg, The City conducts fire investigations as part of its official business. Although the videotape and incident reports were not "prepared" by the City, they are "in the possession" of the City pursuant to the transaction of its business of fire investigation.

The Court also finds that the Pinkerton Client Service Reports (# 44f) and Security Officers Manual/Post Orders (## 45e, 45f) are "official records" because they are "in the possession" of the Hospital pursuant to its agreement with Pinkerton to provide security. Regardless of who prepared the documents they are "official records" in the FOIA context. Similarly, the remaining items on the Amended Index filed by the Hospital are official records within the scope of FOIA.

## II. *FOIA Exemptions*

### A. *Criminal Investigation Exemption*

With respect to the case against the City, the Court finds that the contested records fall under the exemption in § 2.1-342(B)(1): "Memoranda, correspondence, evidence, and complaints related to criminal investigations."

While no arrests were made and no criminal proceedings were instituted regarding the fire at SRMC, the fire investigation was a criminal investigation. The testimony of Special Agent Adams, City Fire Marshal Fryer, and Fire Inspector Atkins show that the investigation of the fire was certainly an investigation into potential criminal activity and the items sought in the action against the city were obtained pursuant to the investigation. All of the items sought by the petitioner which are in the possession of the Petersburg Fire Marshal's Office were obtained by that office pursuant to a criminal investigation conducted in cooperation with the Virginia State Police. Section F-109.0 of the Virginia Uniform Fire Prevention Code states, in part:

> [T]he code official shall investigate, or cause to be investigated, every fire or explosion occurring within the jurisdiction that is of a suspicious nature or which involves the loss of life or serious injury or causes destruction or damage to property . . . . [I]f it appears that such an occurrence is of a suspicious nature, the code official shall immediately take charge of the physical evi-

dence . . . . The code official shall notify those persons desig-
nated by law to pursue investigation into such matters and shall
further cooperate with the authorities in the collection of evi-
dence and prosecution of the case and shall pursue the investi-
gation to its conclusion.

The term "criminal investigation" must be read broadly in this context. *See* Letter to the Honorable Clifton A. Woodrum (June 21, 1991), *in* 1991 Rep. Att'y Gen. 13, 16-17. The exemption continues after the investigation has concluded. In nine paragraphs of § 2.1-342(B) the General Assembly has provided for termination of the exemption after the investigations are complete. The absence of such language in paragraph 1 of § 2.1-342(B) clearly evinces the legislature's intention not to require disclosure of criminal investigations at any time pursuant to FOIA. With respect to the City, the exemption in § 2.1-342(B)(1) applies. The videotape and the incident reports are exempt from production under FOIA in those cases, and Petitions CL95-405 and CL96-114 will be dismissed.

## B. *Personnel and Medical Records Exemption*

The Hospital claims certain documents are exempt under § 2.1-342(B)(3), "personnel records containing information concerning identifiable individuals . . . and medical and mental records." These documents are the training records in response to request # 9 and the medical records in response to requests # 38.9, # 38.10, # 38.11. The Court finds that these items are exempt from production.

## C. *Work-Product Exemption*

The Hospital claims that the videotape (in response to # 49) and photographs (# 47 and # 48) fall under the exemption in § 2.1-342(B)(6): "Memoranda, working papers and records compiled specifically for use in litigation." SRMC's general counsel testified that when he arrived at the Hospital on the night of the fire he directed Bob Phelps to collect as much information about the fire as he could including videotapes and photographs. He did this to preserve evidence as well as prepare for what he reasonably believed to be possible litigation. Mr. Phelps testified similarly. While the attorney did not specifically tell Phelps to make audio comments, the general nature of the request shows the entire tape was made "specifically for use in litigation" and therefore is covered by exemption 6 of FOIA. The Court also finds that the correspondence between SRMC

and the City (# 38.2) and the statements of SRMC employees (# 50) fall within this exemption.

### III. *Statutory Exceptions:* § 8.01-581.17

For a variety of other information, the Hospital does not cite a FOIA exemption, but relies on the privilege created in § 8.01-581.17. The items claimed to be covered by this privilege are Security Daily Activity Reports (in response to # 1, # 45a, # 46a, # 67, # 68, # 79), Security Incident Reports (# 1, # 45a, # 46a, # 67, # 68, # 79), operator logs (# 1, # 40, # 65, # 66, # 69, # 70), Safety Committee Minutes (# 10), attachments to such minutes (# 11, # 12), safety program self assessments (# 14), incident reports (# 37), credentialing information (# 38.9, # 38.10, # 38.11), medical staff meeting notices (# 38.9, # 38.10, # 38.11), distributions to medical staff members (# 38.9, # 38.10, # 38.11), Emergency Operations Critique Forms (# 77), and Quality/Performance Summary Report from Safety Committee to QA Committee (# 77).

The first question is whether § 8.01-581.17 applies as an exception to FOIA disclosure. That section reads:

> The proceedings, minutes, records, and reports of any (i) medical staff committee, utilization review committee, or other committee as specified in § 8.01-581.16 and (ii) nonprofit entity that provides a centralized credentialing service, together with all communications, both oral and written, originating in or provided to such committees or entities, are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after a hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure of such proceedings, minutes, records, reports, or communications. Nothing in this section shall be construed as providing any privilege to hospital medical records kept with respect to any patient in the ordinary course of business of operating a hospital nor to any facts or information contained in such records nor shall this section preclude or affect discovery of or production of evidence relating to hospitalization or treatment of any patient in the ordinary course of hospitalization of such patient.

Code § 8.01-581.16 defines relevant committees as any:

with functions primarily to review, evaluate, or make recommendations on (i) the duration of patient stays in health care facilities, (ii) the professional services furnished with respect to the medical, dental, psychological, podiatric, chiropractic, veterinary or optometric necessity for such services, (iii) the purpose of promoting the most efficient use of available health care facilities and services, (iv) the adequacy or quality of professional services, (v) the competency and qualifications for professional staff privileges, or (vi) the reasonableness or appropriateness of charges made by or on behalf of health care facilities.

Section 2.1-342(A) provides that "unless as otherwise specifically provided by law" all official records should be made available. An example of a court making use of this provision and holding that certain records are exempt from disclosure under FOIA is *Appalachia Information, Inc. v. Boggs*, 9 Va. Cir. 402 (Richmond City 1977). In that case Judge Cole found that mine inspection reports did not have [to] be disclosed under FOIA due to Code § 40.1-11 which states:

Neither the Commissioner nor any employee of the Department shall make use of or reveal any information or statistics gathered from any person, company or corporation, for any purposes other than those of this title or of Title 45.1.

*See also Archer v. Mayes*, 213 Va. 633 (1973) (applying "otherwise specifically provided" to a statute concerning a jury list).

Section 8.01-581.17 protects "privileged communications which may not be disclosed or obtained by legal discovery proceedings." It has been suggested that the term "legal discovery proceedings" should apply only to discovery pursuant to the Rules of Court incident to a pending legal proceeding. But the literal language of the statute and the public policy advanced by the statute do not support such a narrow interpretation. A FOIA action is certainly a "legal proceeding" and its purpose is to "discover" information.

Judge Thomas Horne of the Circuit Court of Loudoun County observed that the objective of the statute:

is to encourage health care providers "to adopt policies and procedures which will provide the public with the highest degree of care recognized by the medical and scientific communities at

any given time." *Francis* v. *McEntee*, 10 Va. Cir. 126, 128 (1987). In enacting § 8.01-581.17, the Virginia General Assembly recognized that in order to achieve this goal there must be open and frank discussions "where criticisms are actually encouraged and mistakes or deficiencies aggressively exposed . . . ." *Johnson* v. *Roanoke Memorial Hospitals, Inc.*, 9 Va. Cir. 196, 198 (1987). In addition, the legislature recognized the need for privacy in order to promote the type of vigorous debate where such open exchanges could be made without fear of public disclosure. Indeed, without protection from disclosure such discussions would probably be meaningless and without substance. Thus, it is the Court's opinion that the intent of the legislators in enacting § 8.01-581.17 was to afford the utmost protection to such communications and thus make them privileged from the discovery process.

*Mangano* v. *Kavanaugh*, 30 Va. Cir. 66 (Loudoun Co. 1993).

Obviously, private hospitals are not subject to FOIA requests. If the public policy behind § 8.01-581.17 is "to provide the public with the highest degree of care recognized by the medical and scientific communities at any given time," it is inconceivable that the legislature meant to compromise the medical care rendered at public hospitals by allowing such communications to be discovered by FOIA requests. This Court finds that the literal reading of the statute and the public policy supporting it require that § 8.01-581.17 provide an exception to disclosure under FOIA actions.

Finding that § 8.01-581.17 provides an exception to FOIA disclosure does not end the analysis because the Court must determine if the information sought by Petitioners falls within the protection of the statute. The scope of the statute has been subject to much disagreement among Circuit Courts in the Commonwealth.

For instance Judge Horne, in *Mangano* v. *Kavanaugh*, 30 Va. Cir. 66 (Loudoun Co. 1993), ruled that hospital policy and procedure manuals and incident reports relating to medical treatment are protected by § 8.01-581.17:

This Court is of the opinion that § 8.01-581.17 should be read broadly and that protection should be accorded all communications originating from or provided to such medical committees. The Court believes this broad approach is consistent with the

objective of the statute which is to encourage health care providers "to adopt policies and procedures which will provide the public with the highest degree of care recognized by the medical and scientific communities at any given time."

Judge Kulp in *Francis v. McEntee*, 10 Va. Cir. 126 (Henrico Co. 1987), ruled that hospital policy and procedure manuals were protected by § 8.01-581.17 and cited the same policy concerns:

By the enactment of this code section, the Virginia General Assembly has clearly made a public policy decision that it is in the best interest of the public to foster unrestrained dialogue among board, staffs and committees of health care providers. Health care providers should be encouraged to adopt policies and procedures which will provide the public with the highest degree of care recognized by the medical and scientific communities at any given time.

These broad pronouncements of policy were limited in the cases of *Estate of Jessie Curtis v. Fairfax Hospital Systems, Inc.*, 21 Va. Cir. 275 (Fairfax Co. 1990), and *Johnson v. Roanoke Memorial Hospitals, Inc.*, 9 Va. Cir. 196 (Roanoke City 1987). In these cases the courts found policy manuals were not protected from disclosure under § 8.01-581.17.

The major objective of these statutes granting both immunity from civil liability and privilege from disclosure is the protection intended to be conferred upon peer reviews, those internal investigations of the quality of services provided by an organization or individual. It is the searching self-critical analysis by which performance is judged by one's colleagues or superiors that characterizes the peer review. The purpose of such review in the medical setting is to improve the efficiency of medical techniques and procedures in the delivery of health care. Such reviews should be free-wheeling exchanges where criticisms are actually encouraged and mistakes or deficiencies aggressively exposed toward the overall improvement of the system. Open discussion and vigorous debate must be promoted without concern that remarks might be made public. The whole procedure of peer review, if it is to have meaning and substance, must be totally inhibited from the fear of disclosure.

*Johnson*, 9 Va. Cir. at 198.

The provisions of §§ 8.01-581.16 and 8.01-581.17 cause difficulty in interpretation. On the one hand the protection afforded "all communications" appears to create a universe of coverage without limitation. On the other hand the provision that the statute shall not preclude discovery of evidence "relating to hospitalization or treatment of any patient in the ordinary course of hospitalization of such patient" appears to reclaim much of what was protected by the former declaration. For example, procedures manuals and hospital protocols "relate to" the hospitalization of patients.

Applying the interpretive doctrine of *ejusdem generis*, the term "communications" must be limited in its application to the particulars that proceed it, namely, the "proceedings, minutes, records, and reports of any medical staff committee, utilization review committee, or other committee as specified in § 8.01-581.16." Judge Annunziata has observed that §§ 8.01-581.16 and 8.01-581.17 are "only intended to protect peer review committee proceedings and similar internal investigations of the hospital from public scrutiny." Quoting Judge Coulter in his opinion in *Johnson* v. *Roanoke Memorial Hospitals*, 9 Va. Cir. 196, 199 (Roanoke City 1987), she further observed that:

> "[T]he ultimate end results of such critiques, which might find their way into depersonalized manuals of procedure and which have been shorn of individualized criticisms, do not merit the same concern for protection from public scrutiny." . . . In summary, discovery of the hospital's guidelines, procedures, and protocols does not threaten open discussion and debate within the hospital's review committees, and therefore, the privilege should not apply.

*Curtis* v. *Fairfax Hospital Systems, Inc.*, 21 Va. Cir. 275, 277-278 (Fairfax 1990) (citations omitted).

This Court is in agreement with the opinions of Judge Coulter and Judge Annunziata that the privilege against disclosure must be limited to accomplish the purpose of the legislation. The Court must analyze the documents sought to be discovered in this FOIA action to determine if they fall within the limited scope of the privilege.

Upon *in camera* review of the documents, the character of the information has been determined. The Safety Committee of the hospital operates in a "peer review" capacity. While its deliberations extend to matters concerning overall security of the hospital premises, the committee also con-

siders matters specific to patient security and contains discussions of specific incidents involving patients and how the hospital staff should have responded to particular incidents, criticisms of actual responses, and suggestions for improvement of services to hospital patients, staff, and visitors. The Safety Committee addresses issues as diverse as proper use of medical equipment, control of hazardous waste for patient, staff and visitor protection, and monitoring of exposure to radiation. These proceedings involve the open discussion and vigorous debate where criticisms are actually encouraged and mistakes or deficiencies are aggressively exposed in furtherance of improvement in delivery of services. Consequently, the Safety Committee documents fall within the protection of § 8.01-581.17.

### IV. *Waiver of FOIA Exemptions or Statutory Exceptions*

Petitioners claim that the Hospital has waived the protection of FOIA exemptions and § 8.01-581.17 by dissemination of certain of the documents to third parties. The first question that the Court must address is whether the doctrine of waiver applies to the Commonwealth or a governmental agency.

In *Main* v. *Dept. of Highways*, 206 Va. 143, 150 (1965), the Supreme Court of Virginia made a broad pronouncement on the subject of estoppel:

> [I]t is well settled that the doctrine of estoppel does not apply to the rights of a state when acting in its sovereign or governmental capacity. This is so because the legislature alone has the authority to dispose of or dispense with such rights.

*See also Westminster-Canterbury of Hampton Roads, Inc.* v. *City of Virginia Beach*, 238 Va. 493, 503 (1989).

> Reason and policy dictate that the state may not waive the exercise of its governmental function. There is an even less compelling reason to apply the doctrine of waiver to the state than to apply the doctrine of estoppel.

*Sink* v. *Commonwealth*, 13 Va. App. 544, 547-48 (1992).

Hospital services provided by a city are an exercise of governmental function. *See Edwards* v. *City of Portsmouth*, 237 Va. 167, 171 (1989) (citing *City of Richmond* v. *Long*, 58 Va. (17 Gratt.) 375 (1867)).

This doctrine that the Commonwealth cannot be subject to waiver has been applied in the FOIA context in *Appalachian Information, Inc.* v. *Boggs*, 9 Va. Cir. 402 (Richmond City 1977), where Judge Cole "disposed of very quickly" the argument that any FOIA exemption could be waived

by the Division of Mines and Quarries. Because, in Virginia, the Commonwealth cannot waive or be estopped from exercising its governmental duties, this Court finds that the Hospital cannot be subject to waiver of FOIA exemptions or the protection of § 8.01-581.17. Even if the Hospital were subject to waiver, this Court, relying on opinions interpreting the Federal FOIA, finds that no such waiver has been made.

In the case before the Court, documents were provided to fire protection agencies (NFPA, FEMA, and the Petersburg Fire Department) and to the Joint Commission on Accreditation of Hospital Organizations (JCAHO). Federal courts ruling on waiver under federal FOIA have ruled that voluntary disclosure must have been previously made to an adversary in order for an exemption to be waived. *See generally,* Wesley Kobylak, Annotation, *Waiver by Federal Government Agency as Affecting Agency's Right to Claim Exemption from Disclosure Requirements Under the Freedom of Information Act (5 U.S.C.S. § 522(b)),* 67 A.L.R. Fed. 595 (1984).

First the Court will examine the disclosure to the fire investigation agencies. An example where waiver was found is *In re Steinhardt Partners, L.P.,* 9 F.3d 230 (2d Cir. 1993), where Steinhardt disclosed documents to the SEC while he was under direct investigation for wrongdoing, although formal charges had not been filed. In both *Steinhardt Partners* and the present case, the disclosure was made voluntarily without the use of official subpoenas. In neither case were formal enforcement or criminal charges brought. In both cases, requests came from an agency that was charged with determining if criminal violations have occurred; however, there is an important difference between the two cases.

While this Court has determined that the fire investigation was a criminal investigation, it did so in the context of determining whether the FOIA exemption for criminal investigations applied in the action against the City. While it was a criminal investigation as far as the City was concerned, it was not a criminal investigation of the Hospital. The Hospital was given no indication that it was the particular subject of the investigation unlike the facts in *Steinhardt Partners.*

In *Westinghouse v. Republic of the Philippines,* 951 F.2d 1414, 1428 (3d Cir. 1991), the court found that "a party who assists the government in investigating or prosecuting another" was not adversarial. Since the Hospital did not have reason to believe it was under direct investigation, the Hospital and fire investigation agencies were working together towards determining the cause of the fire. The remote chance that the investigation would lead to charges against the Hospital does not rise to the adversarial

nature required to constitute waiver. *See also In re·Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984) ("no question" that target of SEC investigation was SEC's adversary); *In re Martin Marietta*, 856 F.2d 619, 625 (4th Cir. 1988) ("interests decidedly adverse" when facing criminal proceedings and debarment from federal contracting). There is not sufficient evidence that the Hospital was a target of the investigation to find an adversarial relationship.

Unlike the fire investigation agencies, the inquiry of the JCAHO was focused upon the Hospital directly. While the Joint Commission is not a government agency, both the United States and the Commonwealth have adopted it as the accrediting agency for hospitals in a number of situations. For example, healthcare organizations accredited by the Joint Commission are deemed by the federal government to meet Medicare conditions of participation. 42 C.F.R. § 1395bb (1995). Therefore, if a hospital is accredited by the JCAHO it does not have to undergo a Medicare certification study by the Secretary of the Virginia Department of Health. Similarly, the Virginia Department of Health assumes that JCAHO certified hospitals meet certain licensure requirements. 11:21 Va. Regs. Reg. 3401 (1995). Since Virginia has adopted the certification of the Joint Commission as adequate for licensure of an institution, this Court will treat it as being *de facto* the government's regulatory agency for accrediting hospitals.

In *Westinghouse* the court outlined several reasons why a party's disclosure to a government agency would not favor the goals of a protected communication:

> When a party discloses protected material to a government agency investigating allegations against it, it uses those materials to forestall prosecuting . . . or to obtain lenient treatment.

*Westinghouse*, 951 F.2d at 1429.

Although the JCAHO inquiry of the Hospital could eventually have a significant detrimental effect on the Hospital, this Court finds JCAHO was not sufficiently adverse to the Hospital to constitute waiver of the FOIA exemption or privilege under § 8.01-581.17. The disclosure was not made to forestall prosecution because JCAHO has no power to prosecute. Disclosure was also not made to obtain lenient treatment because, during an accreditation survey, the Hospital must provide extensive information regarding the Hospital's operations. If JCAHO were found adversarial, waiver would subsume FOIA and render most of the exemptions moot,

particularly § 2.1-342(B)(3), the personnel and medical records exemption.

Even if this Court found that the fire investigation agencies or the JCAHO were adverse, this Court would still find that no waiver has occurred. The D.C. Circuit in *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372-74 (D.C. Cir. 1984), found waiver only because when the information was disclosed to the first adversary, the disclosure "did not have any proper expectations of confidentiality." Similarly, in *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981), the Fourth Circuit found waiver when the material was released "without an intent to limit its future disposition." Although some courts have ruled that disclosure to one adversary waives the privilege as to all adversaries, *see Westinghouse*, 951 F.2d at 1429; *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 846-47 (8th Cir. 1988), this Court rules that "expectations of confidentiality" act as a limit to waiver.

The petitioners have also claimed that the issue of waiver of protection afforded by § 8.01-581.17 should be governed by a different standard than the work-product exemption to FOIA. Petitioners assert that the protection of § 8.01-581.17 is more akin to the attorney-client privilege. The attorney-client privilege is more easily waived than the work-product privilege. A disclosure of information protected by the attorney-client privilege waives the privilege as to all others unless the information was provided only to obtain informed advice. *See Westinghouse*, 951 F.2d at 1423-24. In contrast the work-product privilege is only waived by production to an adversary. *See Westinghouse*, 951 F.2d at 1427-28; *In re Doe*, 662 F.2d at 1081.

The protection provided by § 8.01-581.17 is a qualified privilege similar to the privilege afforded by Rules of Court 4:1(b)(3). Section 8.01-581.17 allows discovery "for good cause arising from extraordinary circumstances being shown." Rule 4:1(b)(3) allows discovery upon a showing of "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Because of the similarity of these exceptions, the Court finds that, if waiver is possible, the privilege under § 8.01-581.17 is only waived when disclosure is made to an adversary. As explained above, waiver has not occurred.

Additionally, petitioners argue that the documents should be provided because such "good cause arising from extraordinary circumstances" has been shown. In a FOIA action, the motivations of the requesting party are

irrelevant. The Court's only function is to determine if the requested information falls within FOIA and if any FOIA exemptions or statutory exceptions apply. "Extraordinary circumstances" can only be found in the context of particularized claims. In a FOIA action, this context is lacking and the Court has no basis to find "good cause" or "extraordinary circumstances." (See discussion below regarding status of Petitioners in FOIA actions.)

## V. *Use of FOIA as a Discovery Device*
## *for Pending or Contemplated Litigation*

The Respondents contend FOIA cannot be used as a substitute to discovery procedures pursuant to the Rules of Court and applicable statutes. While the Court finds that United States Supreme Court cases regarding this issue in the federal context are instructive, the Virginia precedent on this issue leads to a different result.

The two circuit court cases cited by the defendants, *Parvin v. Virginia Dept. of Transportation*, 15 Va. Cir. 349 (Richmond City 1989), and *Watkins v. Republic Lumber and Building Supply Corp.*, 2 Va. Cir. 463 (Richmond City 1978), are not dispositive of this issue. While dicta in *Parvin* suggests that FOIA not be used to supplement discovery, the court's ruling was based on one of FOIA's statutory exemptions. *Watkins* involved a situation in which the court refused to apply a FOIA exemption to a civil discovery request.

This Court finds that the rule stated by the Supreme Court of Virginia in *Associated Tax Service, Inc. v. Fitzpatrick*, 236 Va. 181, 187-88, 372 S.E.2d 625 (1988), controls in this case:

> We conclude that in light of the statutory language that the purpose or motivation behind a request is irrelevant to a citizen's entitlement to requested information. The proper questions, arising from the language of the Act itself, concern the status of the requestor as a citizen of the Commonwealth, the status of the documents as official records, whether any exceptions apply either as listed in the Act or found in any other Code provisions, and whether the requestor will pay the cost of production. The requestor's motivation nowhere comes into play.

The style of these cases shows the absurdity of treating civil plaintiffs or potential civil plaintiffs differently in a FOIA action. Why should Jacqueline Brown be able to receive information from a FOIA request that Cor-

rine Stevens could not, simply because Ms. Stevens is involved in a suit for damages against the City and the Hospital? The broad policy of FOIA mandates that public information be made available to all citizens regardless of their interest in the information. This Court finds no exception to FOIA that precludes its use where the information sought may become evidence in a pending or contemplated civil action.

## VI. *Rulings on Specific Documents*

In the Amended Petition for Writ of Mandamus against the Hospital, the items requested are listed in a letter from Petitioner's counsel to Mr. David Dunham dated March 13, 1996. The Hospital provided some of the information as requested. The contested items are listed in the Amended Index of documents which were submitted to the Court for *in camera* inspection. In some instances there were no documents available to produce, and in other instances the documents were subsequently produced. The Court will respond to each category of documents subject to dispute.

1. Security Daily Activity Reports will be produced. There is no exemption or privilege which covers these documents.

2. Security Incident Reports will be produced in redacted form. The Security Incident Reports contain commentary and recommendations for future practices and procedures as a result of the particular incident and the report is intended for submission to the Safety Committee for discussion. The commentary and recommendation portion of the reports will be redacted from the documents before production.

3. Operator logs will be produced. There is no exemption or privilege which covers these documents.

4. Fire safety related training records from 1992 to 1994 for any staff or contracted personnel on duty when the fire began will not be produced pursuant to the exemption in § 2.1-342(B)(3).

5. Safety Committee minutes will not be produced because of the privilege provided by § 8.01-581.17.

6. Attachments to Safety Committee minutes will not be produced because of the privilege provided by § 8.01-581.17.

7. The 1994 and 1995 Safety Program Self Assessments will not be produced because of the privilege provided by § 8.01-581.17.

8. Correspondence to and from SRMC and the City of Petersburg relating to the fire will not be produced because of the exemptions contained in § 2.1-342(B)(1), criminal investigations exemption, and § 2.1-342(B)(6), work product exemption.

9. Medical records in Dora Matthews' chart will not be produced because of the exemption provided by § 2.1-342(B)(3).

10. Credentialing information will not be produced because of the exemption provided by § 2.1-342(B)(3) and the privilege provided by § 8.01-581.17.

11. Medical Staff meeting notices will not be produced because of the exemption provided by § 2.1-342(B)(3) and the privilege provided by § 8.01-581.17.

12. Distributions to all medical staff members will not be produced because of the exemption provided by § 2.1-342(B)(3) and the privilege provided by § 8.01-581.17.

13. Client Service Reports will not be produced because of the privilege provided by § 8.01-581.17.

14. Pinkerton Security Officer's Manual/Post Orders will be produced. It is in the nature of an operations manual and does not enjoy an exemption or privilege from production.

15. Photographs taken after the fire were done in anticipation of litigation and will not be produced because of the exemption provided by § 2.1-342(B)(6).

16. The videotape made on the day after the fire was produced in anticipation of litigation and will not be produced because of the exemption provided by § 2.1-342(B)(6). The Court recognizes that the videotape (without audio) was given to counsel for the Petitioner in related litigation.

17. Employee statements requested by the Petersburg Fire Department will not be produced because of the exemption provided by § 2.1-342(B)(1) and § 2.1-342(B)(6).

18. Emergency Operation Critique Forms will be provided in blank. Any forms that are completed will not be produced because of the privilege provided by § 8.01-581.17.

19. The Quality/Performance Summary Report from the Safety Committee to the QA Committee will not be produced because of the privilege provided by § 8.01-581.17.

## VII. *Conclusion*

Cases CL95-405 and CL96-114 are dismissed. In case CL96-145, the Hospital must provide the documents as determined by this letter opinion. All other documents will be withheld from production for the reasons stated herein.