## CIRCUIT COURT OF THE CITY OF NORFOLK

Paula Sawyer and
Jack Sawyer

v.

A. Jack Childress,
Jerry O. Penis, and
Hugh Smith

April 14, 1988

Case No. (Law) L86-2672

By JUDGE LEONARD B. SACHS

The issue for decision is whether or not the plaintiffs' motion *in limine* which seeks to preclude the defendants from introducing the issue of "viability" can be or ought to be sustained.

The parents of Jacqueline Sawyer have filed this medical malpractice suit against the defendants, A. Jack Childress, M.D., Jerry O. Penis, M.D., and Hugh Smith, M.D. They have alleged in substance that a series of ultrasound sonograms commencing on January 11, 1987, at Dr. Childress' direction would have revealed to reasonably prudent physicians that Mrs. Sawyer was carrying a defective fetus: one which was seriously afflicted with hydrocephalus and spina bifida while she was still in her second trimester of pregnancy.

Plaintiff alleges that the defendants wrongfully told the plaintiff that she could not obtain an abortion at that time although she asked for one, and that they misrepresented to her the seriousness of the fetal defect. The claim states a cause of action for professional negligence resulting in a "wrongful birth."

The defendants assert among other defenses that at the time of the sonogram, the fetus was a "viable" fetus and that they could not perform an abortion upon a viable fetus.

The issue of wrongful birth is not one of first impression in Virginia. *Naccash v. Burger*, 223 Va. 406 (1982). The Court holds that the motion *in limine* is sustained. The defendants will not be permitted to offer evidence on the issue of "viability" as a defense to the medical malpractice action. The issue will be limited to whether or not the fetus at the time of the ultrasound examination was within the second trimester or the third trimester and if within the second trimester, whether the defendants breached a duty to the plaintiff.

In Virginia under § 18.2-73[1] the Criminal Code provides that there cannot be any criminal sanctions upon the physician if the physician performs an abortion in the second trimester of pregnancy in a hospital setting. In *Roe v. Wade*, 410 U.S. 113 (1973), the United States Supreme Court held that although states have a legitimate interest in assuring that abortions are performed under circumstances that insure the patient's safety, the pregnant female has a right to terminate her pregnancy. At any time prior to the end of the first trimester the State may not interfere with or regulate the pregnant patient's decision made in consultation with her physician to terminate the pregnancy.

Mr. Justice Blackmon speaking for the Court held that the Fourteenth Amendment does not include a fetus "as a person" (410 U.S. 113 at 158). As the Court stated at 410 U.S. 149:

---

[1] Section 18.2-73. When abortion lawful during second trimester of pregnancy. - Notwithstanding any of the provisions of Section 18.2-71 and in addition to the provisions of Section 18.2-72, it shall be lawful for any physician licensed by the Virginia State Board of Medicine to practice medicine and surgery, to terminate or attempt to terminate a human pregnancy or aid or assist in the termination of a human pregnancy by performing an abortion or causing a miscarriage on any woman during the second trimester of pregnancy and prior to the third trimester of pregnancy provided such procedure is performed in a hospital licensed by the State Department of Health or under the control of the State Board of Mental Health and Mental Retardation.

> As we have intimated above, it is reasonable and appropriate *for a State to decide* that at some point in time another interest, that of health of the mother or that of potential human life becomes significantly involved. The woman's privacy is no longer sole and any right of privacy she possesses must be measured accordingly. (Emphasis mine)

The opinion of Mr. Justice Blackmon considered the effect of the criminal statute of Texas upon the rights of both the pregnant woman and her fetus. The Texas Criminal Statutes excepted from criminality only life saving procedures on behalf of the mother.

The right of "personal privacy" (*Roe v. Wade*, 410 U.S. at 154) which exists under the Fourteenth Amendment is the exclusive right of the pregnant female during the first trimester, but as the pregnancy develops the right of privacy gradually gives way to the *right of the State* to proscribe abortions where there is a meaningful opportunity for the fetus to survive and have a meaningful life after birth; i.e. that the fetus is viable. *Roe v. Wade*, 410 U.S. 113 (1973) at 159.

The Supreme Court held that the rights of the fetus became *a matter which the state could consider* for the purpose of regulating abortions when the fetus was "viable":

> that is potentially able to live outside the mother's womb, albeit with artificial aid. Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks, 410 U.S. at 161.

The Court considered the fact that:

> In most States, recovery (for pre natal injuries under tort laws) is said to be permitted only if the fetus was viable or at least quick when the injuries were sustained. . . .

Virginia tort law denies any recovery for personal injury or wrongful death by a fetus *in utero.*

The Virginia statutes exempting physicians from criminal responsibility for performing abortions in certain cases were enacted *after Roe v. Wade, supra.*

*Roe v. Wade* held at 410 U.S. 163, 164 that the state could proscribe or regulate abortions where the fetus became viable except "for the preservation or life or health of the mother."

Section 18.2-73 *does not limit abortion in the second trimester by any reference to "viability".*

The physician's moral judgment, under Virginia law, cannot supercede the mother's right to privacy and choice where the state has *not* proscribed abortion during the second trimester to prevent the birth of a fetus which is known to be or ought to have been known to be physically or mentally defective *in utero* and would be severely handicapped throughout life.

Accordingly, I hold that:

1. The mother's constitutional personal right of privacy has not been proscribed or limited by the Virginia statutes until the third trimester.

2. Giving the language of §§ 18.2-72, 18.2-73 and 18.2-74 their plain and unambiguous meaning according to traditional standards of statutory construction, the Court holds that the legislature, when it enacted those statutes, could have enacted a statute to proscribe abortions except for the life or health of the mother after it had been medically determined that the fetus was viable in the opinion of the physician and two consulting physicians as set forth in § 18.2-74 for third trimester abortions thus putting abortions after viability and the third trimester on the same basis.

The legislature could have but they did not. We must construe the statutes as written where their language is clear and unambiguous. This is particularly so where the definitive decision of *Roe v. Wade* expressly holds that the states could constitutionally proscribe abortions after the fetus became viable. Since the Virginia legislature chose not to do so it reinforces the conclusion *that they did not intend to do so.*

Where the statutes do not proscribe abortion after viability the state has chosen not to preempt the mother's

personal privilege during the second trimester whether or not the fetus is viable.

In this case the parties are seriously at issue as to whether or not the fetus was or could have been viable at the time of the ultrasound on January 11, 1982. The court, in this opinion, does not intimate or hold in the slightest that the fetus was or was not viable at the time of that ultrasound. Accordingly, the issue of viability may not be inserted or relied upon as a defense in this case.

The Motion to Quash the Plaintiff's Subpoena Duces Tecum *addressed to DePaul Hospital,* hereafter "DePaul," is overruled. The Court holds that the material sought by the Plaintiff's *subpoena duces tecum* is not the material referred to and intended to be protected under Section 8.01-581.17.

The material to be protected by that section of the Code is that which is specified as "proceedings, minutes, records and reports" of certain committees.

The statute does not specify that Rules and Regulations governing the operation of the hospital and its departments are to be privileged and exempted from discovery by Section 8.01-581.17. It does grant privilege and protection, however, to the "proceedings, minutes, records and reports" which are involved in the deliberations leading to the establishment of the rules and regulations which govern. The end product is not privileged. In effect, the legislature is protecting as if in "executive session" all of the deliberative proceedings from which come the protocols and other guidelines for operation of the hospital, its staff and its departments.

The reference to § 8.01-581.17 is inapposite since, by its terms, it is intended to exempt those who participate in those deliberative "executive sessions" from civil liability.

Even if it were on point, the prohibition is identical with that set forth in § 8.01-581.16, to-wit: it relates to the process of developing the rules and regulations but not the ultimate rules of governance.

In effect, § 8.01-581.16 deprives us of any view of the legislative history but not the legislation itself. In effect, § 8.01-581.17 provides legislative privilege to the authors of that legislation just as the "debate"

clause of the Constitution of the United States provides protection to members of Congress for their remarks during the development of legislation, but once again the legislation itself is subject to Judicial Review to prevent unconstitutional, arbitrary or even illegal administrative action.

Accordingly, the motion to quash the Plaintiff's subpoena duces tecum addressed to DePaul Hospital will be overruled.