## CIRCUIT COURT OF FAIRFAX COUNTY

Estate of Jessie Curtis

v.

Fairfax Hospital
Systems, Inc., et al.

September 21, 1990

By JUDGE ROSEMARIE ANNUNZIATA

The matter before the Court is claimant's motion to compel Fairfax County Hospital and Linda Beckett, R.N., to answer interrogatories and to produce documents regarding the hospital's guidelines, procedures, and protocols for infant care in the NICU unit.

Claimant filed the following interrogatories to which the hospital objected on the grounds that policies, procedures, and protocols of a hospital are not discoverable:

*Interrogatory No. 5*: Describe in detail Fairfax Hospital's guidelines, protocol, or procedure in February, 1989, providing for or pertaining to utilization of bedding and blankets and/or covers in the NICU and for the manner or method of covering or wrapping blankets and/or covers around an infant, and provide the title, location, and date of any such guideline, protocol, or procedure if in writing.

*Interrogatory No. 6*: If the answer to Interrogatory No. 4 differs from or is inconsistent with the answer to Interrogatory No. 5, then describe in detail the reasons therefore.

*Interrogatory No. 12*: Describe the NICU and/or Fairfax Hospital procedures, rules, or guidelines which control the manner and the frequency with which Jessie Curtis should have been monitored or checked for the period of midnight of February 16 through noon of February 17, 1989.

*Interrogatory No. 13*: Describe the NICU and/or Fairfax Hospital procedures, rules, or guidelines which control or provide the manner of the frequency with which infants in the NICU were to be monitored in February of 1989.

*Interrogatory No. 14*: Since February 17, 1989, have any new or modified procedures, rules, or guidelines of the type described in Interrogatory No. 13 been implemented? If so, describe the changes and modifications, the effective date(s), and the reasons for such implementation.

The hospital also objected to the following Requests for Production of Documents:

*Request No. 6*: All documents which describe or set forth Fairfax Hospital guidelines, protocol, or procedures for utilization of bedding, blankets, and cribs/isolettes in the NICU or which pertain to the NICU and/or which describe or set forth the manner or method of covering or wrapping blankets and/or bedding around an infant.

*Request No. 8*: All documents which describe or set forth NICU procedures, rules, or guidelines concerning the manner and/or frequency with which infants are to be monitored or checked in the NICU for the period January, 1988, through the present.

Fairfax Hospital objects to discovery on the following grounds: (1) the hospital's policies and procedures are privileged; and (2) the information is not discoverable because it is inadmissible and irrelevant.

Virginia Code §§ 8.01-581.16 and 8.01-581.17 provide that the "proceedings, minutes, records, and reports" of certain medical committees, along with all oral and written communications "originating in or provided to" those committees, are privileged. The issue presented is whether the hospital's guidelines, procedures, and protocols are within the scope of the privilege provided by the statute, even though they are not specifically mentioned in the list of protected materials.

The hospital first claims that the guidelines, procedures, and protocols are written "communications" within the scope of § 8.01-581.17. Although the material technically might fall within the broad language of the statute, such an interpretation would provide a limitless privilege. Any ambiguities in the statute must be strictly construed for, as the U. S. Supreme Court has noted, "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *U. S. v. Nixon*, 418 U.S. 683, 709-710 (1974).

Furthermore, the Court must construe the statute in a manner consistent with the General Assembly's intent. *See* Va. Code § 1-13. In my opinion, Va. Code §§ 8.01-581.16 and 8.01-581.17 is only intended to protect peer review committee proceedings and similar internal investigations of the hospital from public scrutiny. As Circuit Judge Coulter noted in his opinion in *Johnson v. Roanoke Memorial Hospitals*, 9 Va. Cir. 196 (1987), "the ultimate end results of such critiques, which might find their way into depersonalized manuals of procedure and which have been shorn of individualized criticisms, do not merit the same concern for protection from public scrutiny." 9 Va. Cir. at 199. *See* Note, "The Medical Review Committee Privilege: A Jurisdictional Survey," 67 N.C. L. Rev. 179 (1988). *See also Anderson v. Breda*, 700 P.2d 737 (Wash. 1985); *Nazareth Literary and Benevolent Association v. Stephenson*, 503 S.W.2d 177 (Ky. 1973). In addition, although many jurisdictions have a similar statutory privilege, to my knowledge no court has extended the privilege to cover a hospital's guidelines, procedures, and protocols. In summary, discovery of the hospital's guidelines, procedures, and protocols does not threaten open discussion and debate within the

hospital's review committees, and therefore, the privilege should not apply.

Second, a traditional principle of statutory construction, *noscitur a sociis*, dictates that "when general and specific words are grouped together, the general words are limited by the specific and will be construed to embrace only aspects similar in nature to those things identified by specific words." *Cape Henry v. National Gypsum Co.*, 224 Va. 596, 603 (1985). Similarly, under the doctrine of *ejusdem generis*, when "a particular class of persons or things is enumerated in a statute and general words follow, the general words are restricted in their meaning to a sense analogous to the less general, particular words. *East Coast Freight Lines v. City of Richmond*, 194 Va. 517, 525 (1953). The term "communications" is thus defined and limited by the list of protected material preceding it, the "proceedings, minutes, records, and reports." Since the material specifically mentioned in the statute, in my opinion, only encompasses compilations of the internal dialogue of the committee meetings and not any guidelines, procedures, or protocols which may result from the meetings, the general term "communications" should not be interpreted to embrace this material either.

The hospital also claims that the policies, procedures and protocols are not discoverable because they are irrelevant and inadmissible. Defendants argue that the materials sought constitute private rules which are inadmissible on the issue of negligence. Defendants cite in support *Pullen & McCoy v. Nickens*, 226 Va. 342 (1983), and *Virginia & North Carolina Wheel Co. v. Chalkley*, 98 Va. 62 (1900), as well as numerous Circuit Court opinions.

The Virginia Supreme Court has not yet addressed the admissibility of these materials into evidence and few courts outside Virginia have addressed this issue. However, I note, first, that it appears that a majority of the other jurisdictions which have addressed the issue have determined the materials to at least be subject to discovery, if not admissible. *See, e.g., Shibilski v. St. Joseph's Hospital*, 266 N.W.2d 264 (Wisc. 1978); *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn. 1977); *Darling v. Charleston Community Hospital*, 211 N.E.2d 253 (Iowa 1965). Moreover, there is dictum from the Virginia Supreme Court's decision in *Bly v. Rhoads*, 216 Va. 645 (1976), which implies

that the materials sought may provide some evidence of the standard of care. *Bly* at 653. It is also noteworthy that a defendant's safety policies have been held admissible in a negligence action on the issue of defendant's knowledge of a potential danger and as evidence of the foreseeability of the injury. *New Bay Shore v. Lewis*, 193 Va. 400 (1952).

Furthermore, the materials sought may not arguably constitute private rules at all, as the term is used in *Pullen & McCoy, supra,* and *Virginia & North Carolina Wheel Co. v. Chalkley, supra.* The materials sought may properly be seen as reflecting widely-adopted standards established or required by third-party entities, such as the Joint Commission of Accreditation of Health Care Organizations (JCAH). As noted in a recent law review article, compliance with JCAH standards has formed the basis for hospital accreditation in recent years. As a result, hospitals adopt the JCAH standards almost without exception and use the standards as models for their own rules. *See* Schockemoehl, "Admissibility of Written Standards as Evidence of the Standard of Care in Medical and Hospital Negligence Actions in Virginia," 18 Univ. Rich. L. Rev. 725, 730 (1984). *See also* Kinney and Wilder, "Medical Standard Setting in the Current Malpractice Environment: Problems and Possibilities," 22 U.C. Davis L. Rev. 421 (1989). Thus, to the extent the hospital's policies and protocols are reflective of industry custom and even state-wide practices, they may be distinguished from the purely private rules held inadmissible by the Supreme Court in *Pullen* and *Chalkley. See Mackey v. Miller*, 221 Va. 715 (1981). (Court sanctioned admissibility of industry safety rules on the issue of the standard of care.)

However, the defendant's arguments concerning the admissibility of this material is an issue which need not be definitely resolved to permit discovery to proceed since evidentiary admissibility is not at issue in a motion to compel discovery. Rather, Virginia Supreme Court Rule 4:1(b)(1) provides in pertinent part that the "parties may obtain discovery regarding any matter not privileged which is relevant to the subject matter involved in the pending action" and "it is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The trial

court is given broad discretion to determine whether the material sought may lead to discovery of admissible information.

Logically, the hospital's rules, regulations, and protocols can lead to discovery of admissible evidence on a myriad of issues. As claimant points out, the information will likely permit a more thorough and effective examination of the defendants and their expert witnesses about the medical care provided to the plaintiff, particularly in light of the applicable standard of care. *Claimant's Memorandum of Points and Authorities in Support of Discovery* at 4. In addition, the policies and procedures also can aid in the discovery of other reports or records generated by parties to the litigation or by other witnesses which may be admissible. The documents also can assist in understanding what the defendants knew or should have known about claimant's condition and when they knew it.

For the above-stated reasons, I find the health care providers must comply with claimant's discovery requests.