## CIRCUIT COURT OF THE CITY OF NORFOLK

Marybelle M. Auer,
administratrix
of the estate of
Nicholas Auer,
deceased

v.

Lenox Baker et al.

February 17, 2004

Case No. (Law) CL03-1037

BY JUDGE JOHN C. MORRISON, JR.

Both Plaintiff's counsel and Sentara Norfolk General Hospital's counsel having appeared before this Court and submitted briefs, the Court overrules Sentara's Motion to Compel and Motion for a Protective Order.

Marybelle M. Auer (Auer), as the administratrix of the estate of Nicholas Auer, the decedent, brought this medical malpractice suit against Dr. Lenox Baker, Mid-Atlantic Cardiothoracic Surgeons, Ltd., Dr. Edward Miller, and Cardiovascular Associates, Ltd. (collectively, the Defendants), whose negligence Auer maintains caused Nicholas Auer's death. The Decedent received an aortic valve replacement, performed by Dr. Baker, and at some point fell victim to a staphylococcus infection, which allegedly caused his death. Auer alleges the Defendants breached their duty of care to the Decedent in that they discovered the infection and failed to properly diagnose and treat the infection. (Mot. for J. ¶¶ 4-5.)

The issue presently before the Court concerns subpoenas duces tecum issued by Auer to Sentara Norfolk General Hospital (Sentara), a non-party to this case. Auer's requests seek specific polices, procedures, directives, instructions, and written memoranda from Sentara, as well as any letters or complaints Sentara has received regarding contamination of samples. According to Auer, this request was prompted by Dr. Baker's deposition testimony on September 3, 2003, wherein, after being questioned regarding his lack of response to indications of the presence of staphylococcus, Dr. Baker responded as follows:

We see reports like this, unfortunately, more frequently than we like. There have been letters written about it. And more recently, we've stopped culturing it. But this is what we call a contaminant. This is not a culture.

(Plaintiff's Reply, Exhibit A 21.) Sentara has objected to the subpoenas duces tecum and filed this Motion to Quash and Motion for a Protective Order. Two separate types of documents are at issue in Sentara's Motions. In dispute are production of certain hospital policies and procedures, as well as certain letters and/or complaints containing patient-identifying information. Each will be addressed separately.

First, Sentara represents that there exists no such policy or procedures as requested by Auer. If no such document exists, then it certainly cannot be produced. However, Sentara objects to discovery on the basis of privilege and relevance nonetheless. As Auer and Sentara have argued this issue at length, the Court will address the issue.

The Code sections which Sentara argues create a privilege for the policies and procedures are Va. Code Ann. §§ 8.01-581.16 and 8.01-581.17 (Cum. Supp. 2003). Section 8.01-581.16 provides civil immunity for members of or consultants to certain boards or committees, and § 8.01-581.17 establishes that communications of certain committees and entities are privileged. There has been significant disagreement among the Virginia circuit courts regarding whether § 8.01-581.17 extends a privilege from discovery to hospital polices, procedures, training manuals, etc. The Supreme Court of Virginia has not ruled on this precise issue.

The Code sections in question are intended to protect the peer review process within hospitals to ensure that specified committees can communicate freely with the goal of ensuring the best possible care to patients. The Supreme Court of Virginia, deciding a separate issue, said the following about § 8.01-581.17:

> The obvious legislative intent is to promote open and frank discussion during the peer review process among health care providers in furtherance of the overall goal of improvement of the health care system. If peer review information were not confidential, there would be little incentive to participate in the process.

*HCA Health Servs. of Va., Inc. v. Levin*, 260 Va. 215, 221, 530 S.E.2d 417, 420 (2000).

Hospital policies and procedures are clearly not of the same character as, for example, peer review committee minutes, which could contain references to specific incidents or physicians. The argument in favor of extending the privilege to policies and procedures rests largely on the premise that the policies and procedures are documents which *originated in* statutorily covered committee meetings; that is to say, policies and procedures are the "end product" of committee effort to ensure the quality of patient care. However, based on the statutory language, the policy concerns behind the statute, and a review of case law from the circuit courts, hospital policies and procedures do not fall within the scope of the § 8.01-581.17 privilege.

This Court has specifically decided the issue of whether a privilege exists for policies and procedures under § 8.01-581.17 on five occasions. On four of those occasions, this Court decided that no such privilege exists. *Sawyer v. Childress*, 12 Va. Cir. 184, 188 (Norfolk 1988); *Vliet v. Sentara Hosps.- Norfolk*,

Case No. L910209 (Norfolk 1993); *Owens v. Children's Hosp. of the King's Daughters, Inc.*, 45 Va. Cir. 97, 99 (Norfolk 1997); *Hurdle v. Oceana Urgent Care*, 49 Va. Cir. 328, 328 (Norfolk 1999). In each of these cases, save *Hurdle*, the Court found that the policies and procedures were not privileged and were discoverable. Even in *Hurdle*, where Judge Everett A. Martin, Jr., ultimately ruled documents were not discoverable on relevancy grounds, the Court recognized that it was not "necessary for the encouragement of debate and criticism in the formulation of general hospital policies to prevent the disclosure of the policies ultimately adopted." *Hurdle v. Oceana Urgent Care*, 49 Va. Cir. 328, 328 (Norfolk 1999). While the committee meetings whose records are privileged may ultimately result in the promulgation of hospital policies and procedures, "[t]he end product is not privileged." *Sawyer v. Childress*, 12 Va. Cir. 184, 188 (Norfolk 1988).

This Court also finds persuasive the reasoning of Judge Annunziata in *Curtis v. Fairfax Hosp. Sys., Inc.*, 21 Va. Cir. 275 (Fairfax County 1990). In *Curtis*, the Court reasoned that disclosing hospital procedures and protocols "does not threaten open discussion and debate within the hospital's review

committees, and therefore, privilege should not apply." *Id.*, 21 Va. Cir. at 277-78. Likewise, the Roanoke Circuit Court, in holding that policy manuals are not privileged from discovery under § 8.01-581.17, explained that:

> the legislature intended to sanctify the genuine work of peer review committees and bare-knuckles details of their searching self-criticisms; that such internal debate should be free and uninhibited; but that the end results of such investigations and evaluations, depersonalized and void of individual criticisms and fault-finding, should not be entitled to such protection.

*Johnson v. Roanoke Mem. Hosps., Inc.*, 9 Va. Cir. 196, 197 (Roanoke City 1987). The reasoning of these opinions is clearly congruent with the guidance set forth by the Supreme Court of Virginia in *HCA Health Services*.

The Court does not find within the statutory language nor within the legislative intent behind § 8.01-581.17 any privilege for hospital policies and procedures. The internal dialogue that goes on within hospital committees is clearly privileged by statute in the interest of open discussion and deliberation within committees. However, the policies and procedures that a hospital may adopt, even though they may ultimately result in whole or in part from such committee dialogue, are a separate and distinct type of document which the statute does not address and therefore does not extend its privilege to. The disclosure of policies and procedures certainly cannot be said to hinder the legislative intent behind the statute. Hospital policies and procedures do not make mention of individual physicians, patients, or incidents, nor do they make known the thoughts or words of any individual committee member. Thus, the legislative intent behind § 8.01-581.17 is intact.

The next question, since the documents are not privileged, is whether such policies and procedures fall within the scope of permissible discovery set forth in the Rule 4:1(b) of the Rules of the Supreme Court of Virginia. As with the issue of privilege, Virginia's circuit courts have taken different stands on this issue.

It is established that private rules of conduct are not admissible to establish the standard of care in a negligence action. *See Pullen v. Nickens*, 226 Va. 342, 350, 310 S.E.2d 452, 456 (1983). Moreover, by statute, it is mandated that, in a medical malpractice action, the standard of care owed the patient is "that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice of specialty in this Commonwealth." Va. Code Ann. § 8.01-581.20 (Cum. Supp. 2003). While Auer attempts to argue that the hospital manuals may themselves be admissible, relying in part on

dicta in the case of *Bly v. Rhoads*, 216 Va. 645, 653, 222 S.E.2d 783, 790 (1976), the standard of care in this action is clearly set forth in the Code, and the Court does not see where the policies and procedures could possibly be admissible to establish such.

Though inadmissible to establish the standard of care in this case, the hospital policies and procedures need only be relevant to any party's claim or defense and reasonably calculated to lead to the discovery of admissible evidence in order to be within the scope of permissible discovery. Va. Sup. Ct. R. 4:1(b). Given the broad scope of Rule 4:1(b), together with potential uses of the documents alternative to establishing the standard of care and the potential to lead to discovery of admissible evidence, these documents are within the scope of permissible discovery.

Sentara's Motion to Quash and Motion for a Protective Order regarding the discovery request for specified hospital policies and procedures are denied. The documents are not privileged, they are relevant, and they are reasonably calculated to lead to the discovery of admissible evidence.

Auer's subpoenas duces tecum also requests from Sentara letters and/or complaints relating to contamination and/or preservation of the integrity of samples and specimens. Sentara submits that it is in possession of two such documents, and, while the documents are available for the Court's *in camera* review, Sentara objects to the discovery of these items. Sentara first objects on the grounds of relevance, arguing that, since these documents do not relate to the Decedent's care, they are not relevant to this case. However, Auer makes clear that her motivation for requesting these documents was based on Dr. Baker's deposition testimony regarding the existence of previous problems with sample contamination and written documentation thereof. Therefore, Sentara's relevance argument is misplaced. In fact, the existence of these documents does appear relevant to the veracity of Dr. Baker's deposition testimony.

Sentara also objects to this discovery request based on the argument that these documents contain confidential health information regarding two patients unrelated to this action. Sentara argues that Auer may not obtain these documents since they constitute part of the unrelated patients' medical records without first complying with the requirements of the Virginia Patient Health Records Privacy Act, Va. Code Ann. § 32.1-127.1:03 (Cum. Supp. 2003), and the federal Health Insurance Portability and Accountability Act, 45 C.F.R. Parts 160-164. Sentara argues that both the state and federal provisions cited require a copy of the subpoena to be supplied to the unrelated patients, who would then be afforded an opportunity to present a motion to quash.

It does not escape the Court's notice that requiring Auer to serve a subpoena on two unrelated patients, whose identity Sentara has not revealed and seeks to protect, is a virtual impossibility. It should also be noted that the practice with which Dr. Baker is associated, Mid-Atlantic Cardiothoracic Surgeons, Ltd., has apparently already supplied an internal memorandum as well as a letter regarding false positive culture reports. The letter contained presumably patient-identifying information, which was simply redacted. Clearly, Auer's discovery request can be satisfied without revealing any confidential or patient-identifying information. In light of these facts, Sentara should present the two documents in question to the Court for review so that any confidential, patient-identifying information can be redacted and, if necessary, a protective order can be entered.