# CIRCUIT COURT OF FAIRFAX COUNTY

Ronald Flinchum,
Executor of the Estate of
Catherine Flinchum,
deceased

v.

INOVA Health System et al.

June 19, 2012

Case No. CL-2011-258

BY JUDGE JAN L. BRODIE

This matter came before the Court on June 1, 2012, upon Plaintiff Ronald Flinchum's Motion to Overrule Objections and Compel Discovery. Following the hearing, the Court took the matter under advisement. After reviewing the briefs and considering the arguments and cases cited by counsel, the Court reaches the following findings and conclusion.

*Background*

This case arises from a medical malpractice action filed on January 6, 2011, by Plaintiff Ronald Flinchum, Executor of the Estate of Catherine Flinchum (the "Decedent"), who became an in-patient at Fairfax Hospital, which is owned by Defendant INOVA Health Care Services ("INOVA"), on March 23, 2009. The Decedent underwent lumbar spine surgery while under the care of Defendant Arthur Bergh, an anesthesiologist, who was allegedly an employee of Defendant Fairfax Anesthesiology Associates,

Fairfax Anesthesiology Associates, Inc., or American Anesthesiology of Virginia, P.C. After surgery, the Decedent was transferred for post-operative recovery to the post-anesthesia care unit ("PACU"), where she was under the care of Kristin L. Morris. Upon release by Ms. Morris, the Decedent was transferred to a Tower Floor Room in the hospital for further recovery. The Complaint alleges that, during this time, the Decedent was under the care of Defendant Bergh, various floor nurses, and Ms. Morris, all of whom acted negligently in their care of the Decedent, who went into respiratory arrest that afternoon and, as a result, died on March 30, 2009. The Plaintiff seeks recovery of medical expenses, funeral and burial expenses, and compensation for the Decedent's family's mental anguish.

In June 2011, the Plaintiff served requests for production of documents upon the Defendant INOVA. Request for Production No. 2 specifically requested documents pertaining to any policies for management of obstructive sleep apnea patients, morbidly obese patients with known obstructive sleep apnea, policies for care of patients in and discharge of patients from the PACU, policies regarding the care and monitoring of patients on the orthopedic floor, and pain management policies. INOVA filed general objections in July 2011, asserting that the request sought materials "protected from discovery pursuant to the privilege established in Va. Code § 8.01-581.17."

The Plaintiff argues that the materials are discoverable and not protected by the statutory "peer review" privilege created by § 8.01-581.17. The Plaintiff asserts that the materials are relevant and admissible not only because they provide information regarding the knowledge the Defendants possessed of a potential danger and the foreseeability of the occurrence of the injury, but also because the medical records in this case are replete with references to the use of particular protocols in the care of the Decedent through codes and numbers. The Plaintiff cites circuit court decisions which held that § 8.01-581.17 does not protect hospital policies and procedures, such as those requested in this case, because they do not threaten the existence of open and collaborative processes in the formulation of such policies. *See, e.g. Gravely v. Perren*, 77 Va. Cir. 370, 371 (Martinsville City 2009); *Johnson v. Roanoke Mem'l Hosps.*, 9 Va. Cir. 196, 197 (Roanoke City 1987). Moreover, given INOVA's reliance on procedure codes for certain protocols and policies, the Plaintiff is entitled to discovery of those referenced documents.

INOVA, however, argues that § 8.01-581.17 protects internal hospital policies and procedures from discovery and also that the requested documents are irrelevant and not calculated to lead to the discovery of admissible evidence. INOVA states that §§ 8.01-581.16 and 8.01-581.17 were enacted to "promote open and frank discussion during the peer review process among health care providers in furtherance of the overall goal of improvement of the health care system." *HCA Services of Va. v. Levin,*

260 Va. 215, 221, 530 S.E.2d 417, 420 (2000). INOVA cites the July 2011 Amendment to § 8.01-581.17 (the "Amendment") to support its argument that internal policies and procedures are protected. The Amendment added the following language to § 8.01-581.17:

> [T]he analysis, findings, conclusions, recommendations, and the deliberative process of any medical staff committee. . . as well as the proceedings, minutes, records, and reports . . . shall be privileged in their entirety under this section.

INOVA argues that internal clinical policies, procedures, and protocols are the "conclusions" and "recommendations" of committees as defined in § 8.01-581.16. The policies, procedures, and protocols also represent communications "originating in" the committees. In support of its argument, INOVA cites several circuit court decisions which held that a hospital's internal guidelines, regulations, procedures, or protocols are privileged and not discoverable. *See Mejia-Arevalo v. INOVA*, 77 Va. Cir. 43 (Fairfax County 2008); *Head v. INOVA Health Care Services*, 55 Va. Cir. 43 (Fairfax County 2001); *Francis v. McEntee*, 10 Va. Cir. 126 (Henrico County 1987).

INOVA further asserts that the Amendment was the General Assembly's attempt to codify the holding in in *Riverside v. Johnson*, 272 Va. 518, 636 S.E.2d 416 (2006). In *Riverside*, the Supreme Court of Virginia stated that "[i]t is the deliberative process and the conclusions reached through the process that the General Assembly sought to protect."

During argument, the Plaintiff also argued that INOVA failed to provide a privilege log for those documents it claimed were protected. Finally, the Plaintiff argued its entitlement to documents and information revealing facts surrounding the Decedent's treatment at INOVA. Though not briefed, the Court will also rule on those two requests.

*Analysis*

The Supreme Court of Virginia has not addressed the discoverability of internal policies, procedures, and protocols under § 8.01-581.17. There is a split among the circuit courts on the interpretation of the Code Section. There is no disagreement, however, that internal policies, procedures, and protocols may not be admitted at trial to prove the standard of care. *Pullen v. Nickens*, 226 Va. 342, 310 S.E.2d 452 (1983); *Virginia Ry. & Power Co. v. Godsey*, 117 Va. 167, 83 S.E. 1072 (1915).

In *Mejia-Arevalo*, the trial court declined to compel the Defendant INOVA to respond to requests for production of documents related to protocols for dealing with non-English speaking patients, treatment of patients by on-call physicians, and labor and delivery. 77 Va. Cir. at 45. The court found that the protocols at issue were the end result of self-examination the legislature

intended to promote through § 8.01-581.17. 77 Va. Cir. at 47. Furthermore, the court determined that the policies should be privileged to correspond with the long-recognized Virginia rule that internal standards of conduct are not admissible at trial. 77 Va. Cir. at 48.

However, in *Jones v. Perez*, 81 Va. Cir. 52 (City of Chesapeake 2010), the trial court followed other circuit court decisions narrowly construing the privilege and compelled production of CT Thorax Scan protocols in effect at the time of the plaintiff's injury. The court employed the canon of statutory construction *ejusdem generis* and found that the phrase "all communications" as provided in § 8.01-581.17 was limited to the enumerated "proceedings, minutes, records, and reports." 81 Va. Cir. at 64

Prior to both *Mejia-Arevalo* and *Perez*, the Supreme Court of Virginia opined on the scope of § 8.01-581.17 in *Riverside*, without addressing internal hospital policies, procedures, and protocols directly. 272 Va. 518, 636 S.E.2d 416. In *Riverside*, the decedent died after she fell when she got out of her hospital bed without assistance. 272 Va. at 524, 636 S.E.2d at 418. The Plaintiff, executor of the decedent's estate, requested orientation instructions, nurse training materials, and a quality care control report in discovery. 272 Va. at 528, 636 S.E.2d at 421. The trial court granted the Plaintiff's motion to compel these documents over the defendant's objection. *Id.* On appeal, with respect to the orientation instructions and nurse training materials, the Court affirmed the trial court's ruling because the documents were not policies and procedures that employees were expected to follow as in *Godsey* and *Pullen*. 272 Va. at 529, 636 S.E.2d at 422. Further, it was clear that the requested materials would not be admitted at trial to establish the standard of care. *Id.* Rather, the Plaintiff sought to use the documents to support its expert witness, who relied upon the materials in formulating her opinion on the standard of care. *Id.*

With respect to the quality care control report, the Court noted that " `[t] he obvious legislative intent [of the statute] is to promote open and frank discussion during the peer review process among health care providers in furtherance of the overall goal of improvement of the health care system.' . . . It is the deliberative process and the conclusions reached through that process that the General Assembly sought to protect." 272 Va. at 533, 636 S.E.2d at 424 (citing *HCA Health Services of Va., Inc. v. Levin*, 260 Va. 215, 221, 530 S.E.2d 417, 420 (2000)). The Court held that the factual patient care incident information, such as that contained in the quality care control report was not privileged because it neither "contain[ed] [n]or reflect[ed] any committee discussion or action" nor was it the "type of information that must `necessarily be confidential' in order to allow participation in the peer or quality assurance review process." *Id.* The Court affirmed the trial court's ruling because the factual information contained in the quality care control report fell under subsection (C) of Code § 8.01-581.17. *Id.*

In 2011, the General Assembly amended § 8.01-581.17 by adding in the following language to § 8.01-581.17(B), which the Defendant argues, codified *Riverside* and clarified that a healthcare provider's internal policies and procedures are privileged:

> [T]he analysis, findings, conclusions, recommendations, and the deliberative process of any medical staff committee, utilization review committee, or other committee, board, group, commission, or other entity specified in § 8.01-581.16, as well as the proceedings, minutes, records, and reports, including the opinions and reports of experts, of such entities shall be privileged in their entirety under this section.

The parties agree that internal clinical policies and procedures are promulgated through hospital committees, which function pursuant to § 8.01-581.16. However, the Defendant argues that those policies constitute conclusions and recommendations of the enumerated committees, whereas the Plaintiff relies upon a narrow construction of the statute, which limits the privilege to the internal dialogue or peer review portion of the committees' activity.

The Court is aware of only one federal district court case addressing this issue after the Amendment. *See Fleming v. Mountain States Health Alliance*, 2012 U.S. Dist. LEXIS 72795 (W.D. Va. May 25, 2012). In *Fleming*, the decedent was admitted to the hospital for pneumonia, at which time his fall risk had been assessed at a 16. The second day of his stay, the decedent's bed sensor was turned off when he went to the bathroom where he slipped, fell, and hit his head. When the decedent's physician was notified of his fall, "Fall Protocol 1" was initiated. The decedent died later that day. The plaintiff Estate sought production of fall prevention policies, in-service training manuals, and documents given to the decedent's family, policy documents and in-service training for bed alarms, and incident reports created as a result of the decedent's fall. The defendant hospital objected to the request for fall prevention policies and policy documents for bed alarms and argued that those documents were privileged under § 8.01-581.17. The defendant hospital objected to the other requests as irrelevant, unduly burdensome, and overly broad.

Magistrate Judge Sargent determined that the General Assembly, in enacting the privilege pursuant to § 8.01-581.17 intended "to promote open and frank discussion *during* the peer review process among health care providers with the ultimate goal of improving the quality of health care." 2012 U.S. Dist. LEXIS 72795 at *8 (citing *Mejia-Arevalo*, 77 Va. Cir. 43, *Auer v. Baker*, 63 Va. Cir. 596 (Norfolk 2004); *Francis v. McEntee*, 10 Va. Cir. 126 (Henrico County 1987)). The court further held that "the ultimate end results of such critiques, which might find their way into depersonalized manuals of procedure and which have been shorn of individual criticisms,

do not merit the same concern for protection from public scrutiny." 2012 U.S. Dist. LEXIS at *9.

Additionally, the court found that "the hospital's policies, procedures, and protocols regarding what measures should have been implemented for a patient with a fall risk of 16 and should be done when 'Fall Protocol I' is initiated" were relevant to the plaintiff's case to determine whether or not the defendant acted with the requisite "degree of skill and diligence practiced by a reasonably prudent practitioner." *Id.* at *12. The court also found the in-service training manuals relevant to show what education the patient and his family members should have received. *Id.* at *13. However, the court specifically noted that it was not making a determination as to the admissibility of the policies, procedures, and protocols. *Id.* at *12.

This Court is persuaded by the court's reasoning in *Fleming*. In the present case, INOVA already produced some factual information regarding the Decedent's treatment and INOVA's response to her respiratory arrest. However, the documents produced are replete with references to indecipherable acronyms or codes for hospital policies, procedures, or protocols. To accurately gather the facts surrounding the Decedent's death, as the Plaintiff is entitled, it must be able to discover the policies incorporated by reference by the defendants in the records as a substitute for written explanations or factual annotations. Similar to how the plaintiff in *Fleming* was entitled to know what occurred when "Fall Protocol I" was initiated, the Plaintiff in the instant case is entitled to know what protocols were initiated during the Decedent's stay at the hospital.

The Court is further convinced that the policy rationale behind § 8.01-581.17 will be adequately protected despite making the policies, procedures, and protocols of the hospital discoverable. It is clear that the General Assembly intended to encourage the process peer review committees engage in to incentivize better healthcare practices. However, once the peer review process and deliberations are complete, the hospital's policies, procedures, and protocols, sanitized of any reference to prior patients, mistakes, or accidents by physicians and other hospital employees, and any research, discussion, minutes, communications, or reports used in formulating those policies, no longer require protection from discovery. In the words of the Supreme Court of Virginia in *Riverside*, the requested policies, procedures, and protocols in this case are not the "type of information that must 'necessarily be confidential' in order to allow participation in the peer or quality assurance review process." Moreover, a review of the plain language of the statute indicates that the General Assembly has not included policies, procedures, and protocols promulgated after the proceedings and deliberative process is complete in the enumerated items protected by the Amendment. Once the policies, procedures, and protocols, are promulgated and then referenced in a patient's records as a shorthand means of summarizing what was done, as in this case, the Plaintiff should

be able to discover such depersonalized information in order to fully understand the facts and circumstances of the Decedent's death. Therefore, based on the facts in this case, the requested documents are relevant to the Plaintiff's case and do not fall within the privilege provided in § 8.01-581.17. However, at this time, the Court makes no determination as to the admissibility of the requested documents at trial, a decision reserved for the trial judge.

## Conclusion

For the foregoing reasons, the Court grants the Plaintiff's Motion to Overrule Objections and Compel Discovery and orders INOVA to fully and completely respond to Plaintiff's Request for Production No. 2 within ten days. The Court further orders that INOVA provide the Plaintiff a privilege log pursuant to Va. S. Ct. R. 4:1(b)(6)(i) within ten days of the entry of the Court's order in this case. Finally, the Court also orders that, for the reasons already stated, INOVA produce any documents regarding the facts surrounding the Decedent's stay and her death to the Plaintiff.